**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**ZACHARY WHITMORE,**

      **Plaintiff,**

**v.**                               **Case No. 3:18-cv-01483**

**WESTERN REGIONAL JAIL;
SERGEANT FRANKLIN;
C.O. GUICE; C.O. THEUITHEN;
C.O. PAUL; C.O. HUGHS;
CORP. ERWIN; C.O. NAPIER;
CAPTAIN ALDRIDGE;
CORPORAL YORK; and,
C.O. ENDICOTT,**

      **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

In November 2018, Plaintiff, Zachary Whitmore ("Plaintiff"), proceeding *pro se* and incarcerated at the Western Regional Jail and Correctional Facility ("WRJ") in Barboursville, West Virginia, filed a complaint pursuant to 42 U.S.C. § 1983. (ECF No. 3). Pending before the court are Defendants' Motions to Dismiss the Complaint. (ECF Nos. 21, 30, 36, 39, 41). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motions to Dismiss, (ECF Nos. 21, 30, 36, 39, 41), be **GRANTED**; that the complaint,

(ECF No. 3), be **DISMISSED**, with prejudice; and that this action be removed from the docket of the court.

## I.    <u>Relevant Facts and Procedural History</u>

Plaintiff filed a complaint in November 2018, alleging that on November 8, 2018, while incarcerated at the WRJ, he and several other inmates were put in "lockdown" and placed in A5 Section, an administrative segregation unit known as "the whole." (ECF No. 3 at 4). Plaintiff states that the cells in A5 Section contained mold and iron stains on the walls. While in the section, he was not offered recreation or gym time. (*Id*. at 5). Inmates were forced to wash their own clothes in their sinks as there was no reliable laundry service. The food was not properly cooked and "uneatable," but if inmates complained, they would be refused food entirely. Plaintiff asserts that inmates in the section were "treated less than human." (*Id*.). Plaintiff states that Section A5 contained two mentally impaired inmates who were "disturbed" individuals and lacked the capacity to care for themselves. (*Id*. at 4). These individuals would constantly urinate on the floor and smear fecal matter on the walls. (*Id*. at 7). Fecal matter, urine, and trash migrated into Plaintiff's cell due to these activities. (*Id*.). Plaintiff asserts that he had to wait "6 hours or more before anything was done to clean it up." (*Id*.).

Plaintiff provided further details regarding this incident at a status conference held on June 24, 2019. (ECF No. 45). Plaintiff informed the Court that due to the actions of inmates in the cells above his, water mixed with fecal matter seeped into his cell, causing Plaintiff's cell to become flooded with 2-3 inches of sewage water. Plaintiff alerted prison staff to the conditions, but a clean-up was not attempted until nearly 12 hours later, during which time Plaintiff was forced to breathe in the fetid water. Plaintiff asserted that this irritated his lungs, but reported no serious or long-term physical injuries. Plaintiff

described the belated sanitization effort made by the prison as being inferior and stated that he continued to endure substandard conditions. Plaintiff was held in this section for approximately two weeks before being transferred.

For relief, Plaintiff requests that this Court enter an injunction in order to "put a stop to the mistreatment of inmates at this state run facility." (ECF No. 3 at 7). Plaintiff further requests monetary compensation for the mental anguish he was forced to endure. Plaintiff asks that this Court "shut down" the facility if it proves unable to "ensure [that] every inmate is given basic human rights." (*Id.* at 7-8).

On January 2, 2019, Defendants, the WRJ, C.O. Napier, and Corporal Erwin, filed a Motion to Dismiss with an accompanying Memorandum. (ECF Nos. 21, 22). Defendants contend that they are immune to suit both because they are not "persons" subject to liability under § 1983, and because they are protected by the principle of sovereign immunity contained in the Eleventh Amendment to the United States Constitution ("Eleventh Amendment"). (ECF No. 22 at 5). In support of their argument that they are being sued in their official capacity, and not as "persons" under § 1983, Defendants Napier and Erwin contend that they are identified by their official titles in the complaint, and the complaint contains no specific allegations against them. (*Id.* at 4-5). Defendants further argue they are entitled to dismissal on the merits, because even if the facts alleged by Plaintiff are taken as true, they fail to set out a meritorious claim under the Eighth Amendment to the United States Constitution ('Eighth Amendment"). (*Id.* at 8-9).

On January 14, 2019, Defendants, the WRJ, C.O. Napier, and Corporal Erwin, filed a Supplemental Memorandum in Support of Motion to Dismiss. (ECF No. 25). Defendants identify an additional basis for dismissal of the complaint, arguing that Plaintiff's claims for injunctive relief are now moot as he has been transferred to the

Mount Olive Correctional Complex and is no longer incarcerated at the WRJ. (*Id.* at 3).

On March 4, 2019, Defendant, Captain Aldridge, filed a Motion to Dismiss with an accompanying Memorandum. (ECF Nos. 30, 31). In the Motion, Defendant Aldridge argues he is entitled to dismissal on the same grounds as put forth by the other Defendants. (ECF No. 30 at 1). On April 10, 2019, Defendant, Corporal York, filed a Motion for Dismissal based on the same arguments. (ECF Nos. 36, 37). On April 16, 2019 Defendants, C.O. Endicott and C.O. Paul followed suit. (ECF Nos. 39, 40, 41, 42). Although the final deadline for responses to the various motions to dismiss was May 13, 2019, as of the date of filing, Plaintiff has not submitted any response.

## II.    **Standards of Review**

Defendants describe their Motions to Dismiss as filed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, Fed. R. Civ. P. 12(b)(1). (ECF No. 21 at 1, 30 at 1, 36 at 1, 39 at 1, 41 at 1). Defendants are correct that "[t]he Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6)." *Haley v. Virginia Dept. of Health*, Case No. 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va. Nov. 13, 2012) (citing *Andrews v. Daw,* 201 F.3d 521, 525, n.2 (4th Cir. 2000)). "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Id.; see also Zemedagegehu v. Arthur*, No. 1:15cv57, 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. Oct. 17, 2012) (collecting cases). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)

A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219.

4

In that case, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams,* 697 F.2d at 1219). Second, the movant may contend, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords plaintiff the same procedural protection she would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson*, 905 F.Supp.2d at 719. However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the amended complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach*, 278 F.3d at 405–06. "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.'*"

5

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988)).

While the Court "take[s] the facts in the light most favorable to the [P]laintiff, … [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Plaintiff filed his amended complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the amended complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for her, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

III.   **Discussion**

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." *Id*. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of State law. *Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792, at *2 (D.S.C. Sept. 8, 2010); *see also American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Id*. at 50.

**A. Plaintiff's requests for injunctive relief are moot**

Defendants argue that Plaintiff's requests for injunctive relief should be dismissed as he has been transferred from the facility where the events that are the subject of the complaint occurred. (ECF Nos. 25 at 1, 31 at 9, 37 at 9, 40 at 9, 42 at 9). Defendants have provided an "Inmate Release from Custody" form, which reveals that Plaintiff was transferred from the WRJ to the Mount Olive Correctional Complex on December 21, 2018. (ECF No. 25-1). Plaintiff is currently incarcerated at the Stevens Correctional

Center/McDowell County Corrections. (ECF No. 44). For injunctive relief, Plaintiff requests that this Court order the WRJ to stop "the mistreatment of inmates at this state run facility." (ECF No. 3 at 7). He further asks that this Court reprimand or fire certain individuals involved in the alleged denial of Plaintiff's rights, and "shut such facilitys [sic] down" if the Court believes it necessary to ensure compliance with the constitutional requirements of the Eighth Amendment. (*Id.*). Plaintiff has not responded to Defendants' argument that his requests for injunctive relief are now moot.

As a prerequisite to the exercise of federal jurisdiction, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Action by a defendant that simply accords all the relief demanded by the plaintiff may moot an action." *W. Virginia Highlands Conservancy v. Norton*, 161 F. Supp. 2d 676, 679 (S.D.W. Va. 2001) (citing 13A Federal Practice and Procedure § 3533.2). A case becomes moot, and accordingly no longer falls within the court's subject matter jurisdiction, when it is "impossible for a court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service*

8

*Employees*, 567 U.S. 298, 307 (2012)).

Defendants are correct that "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir.2007).

A narrow exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d 281, at 289 (internal quotation marks and citations omitted). Plaintiff has provided no indication, neither in a response to Defendants' motions, nor in his appearance before the Court during the status conference, that the alleged wrongful conduct is continuing following his transfer from the WRJ. When considering a similar case, where an inmate alleged his constitutional rights had been infringed by the practices of a prison, this Court held that, due to the plaintiff's transfer, there was "no reasonable expectation that [the plaintiff] will be subjected to [the] same alleged misconduct at" the prison where the alleged wrongs occurred. *Owens v. FCI Beckley*, No. 5:12-CV-03620, 2013 WL 4519803, at *8 (S.D.W. Va. Aug. 27, 2013); *see also Pumphrey v. United States*, No. CV 5:15-06509, 2015 WL

9

7774297, at *2 (S.D.W. Va. Nov. 5, 2015), *report and recommendation adopted*, No. 5:15-CV-06509, 2015 WL 7779508 (S.D.W. Va. Dec. 2, 2015) (inmate's requests for injunctive relief regarding violations of the Eighth Amendment were rendered moot by the inmate's transfer to a different facility); *Redden v. Ballard*, No. 2:17-CV-01549, 2018 WL 4327288, at *9 (S.D.W. Va. July 17, 2018), *report and recommendation adopted*, No. 2:17-CV-01549, 2018 WL 4323921 (S.D.W. Va. Sept. 10, 2018), *aff'd*, 748 F. App'x 545 (4th Cir. 2019) ("Based upon the plaintiff's transfer, all forms of declaratory and injunctive relief sought in this court are now moot.").

Plaintiff has provided no indication that he will be transferred back to the WRJ, and then again placed in administrative segregation in the A5 Section as would be required for Plaintiff to be again subjected to the alleged unconstitutional conditions of confinement. Accordingly, the undersigned **FINDS** that Plaintiff's claims for injunctive relief have been rendered moot by his transfer from the facility where the alleged constitutional violations occurred.

### B. Plaintiff's complaint fails to state an Eighth Amendment violation

While Plaintiff's requests for injunctive relief are rendered moot by his transfer from the WRJ, his transfer does not moot his request for compensatory damages. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (finding that inmate's transfer or release from confinement does not moot the inmate's claim for monetary damages). Plaintiff does not explicitly state under which provision of the Constitution he brings this claim, however, as his complaint concerns allegedly substandard conditions at the WRJ, it is best understood as arguing that the conditions of his confinement at that facility violated his Eighth Amendment right to be free from cruel and unusual punishment. *See Strickler v. Waters,* 989 F.2d 1375, 1378-79 (4th Cir. 1993).

10

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Id.* at 1379. (quoting *Williams*, 952 F.2d at 824). "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). The necessary *prima facie* showing includes both an objective component and a subjective component, meaning that a plaintiff must demonstrate (1) "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard, (objective component), and (2) that the responsible prison officials had a "sufficiently culpable state of mind," (subjective component). *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)).

### 1. Objectively serious deprivation

The conditions of confinement described by Plaintiff do not rise to the level of an objectively serious deprivation of a basic human need as required to establish an Eighth Amendment violation. Plaintiff states that while placed in administrative segregation for approximately two to three weeks he was denied the opportunity to participate in recreation or gym time; was forced to wash his own clothes in the sink; was often provided uncooked and inedible food; was placed in a cell which contained mold and iron stains; and was housed next to inmates who would constantly urinate on the floors and smear their own feces on the walls. (ECF No. 3 at 5-7). At one point, Plaintiff's cell became flooded with water, fecal matter, trash and urine and was not cleaned "for 6 hours or more." (ECF No. 3 at 7). Plaintiff described this incident more fully during the status conference, explaining that his cell became flooded due to inmates housed above his cell

flooding their own toilets. This resulted in approximately 2-3 inches of water contaminated by fecal matter and urine filling Plaintiff's cell, as well as seeping into the surrounding area. The correctional officers assigned to the segregation unit were also forced to endure the standing fecal water until it was cleaned up over 12 hours later. Plaintiff states that the cleanup was perfunctory and consisted of merely vacuuming up the water without a full cleaning of his cell, meaning that Plaintiff was subjected to an odious smell and unsanitary living situation for the remainder of his stay in segregation.

The conditions described by Plaintiff are certainly unpleasant, and do not paint a picture of a particularly well-maintained or efficiently run jail. However, "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)). Prisons are not required to provide, and "inmates should not expect, the 'amenities, conveniences and services of a good hotel.'" *Lewis v. W. Reg'l Jail*, No. 3:11–cv–01016, 2012 WL 3670393, at *11 (S.D.W.Va. July 24, 2012) (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988)).

In *Beverati v. Smith*, the Fourth Circuit considered the plaintiffs' claim that their placement in an administrative segregation unit violated their constitutional rights. *See* 120 F.3d 500, 504 (4th Cir. 1997). The plaintiffs claimed that (1) their cells were unbearably hot; (2) when they first arrived in the unit their cells were infested with vermin, smeared with human feces and urine, and flooded with water from the toilet on the floor above; (3) they were forced to clean the cells with their own clothing and shampoo; (4) they received food cold and in small portions; (5) they infrequently received clean clothing, linen, and bedding; (6) they were only permitted to leave their cells three

12

to four times per week; and, (7) they were denied recreation, and educational, and religious services. *Id*. The Fourth Circuit accepted as true these allegations for the purposes of the ruling, but nevertheless found that the plaintiffs failed to show a violation of their constitutional rights. *Id*.

The court in *Beverati* considered the plaintiffs' claims in light of the Fourteenth Amendment to the United States Constitution, ("Fourteenth Amendment"), which, rather than asking whether the conditions were an objectively serious deprivation as required by the Eighth Amendment, requires a court to consider whether the conditions of confinement represented "an atypical and significant hardship" as compared to those experiences which are "an ordinary incident of prison life." *Id*. at 503. However, courts in this circuit have concluded that the Fourteenth Amendment analysis contained in *Beverati* is equally applicable to Eighth Amendment claims, as the question of whether the conditions of the conditions represent an "atypical and significant hardship" is similar to the question of whether the conditions represent an objectively serious deprivation; indeed, the latter question provides a more difficult evidentiary hurdle for a prisoner. *See Copeland v. Dep't of Pub. Safety & Corr. Servs.*, No. CV JKB-17-0013, 2017 WL 5187741, at *7 n.5 (D. Md. Nov. 8, 2017) ("Although *Beverati* did not consider an Eighth Amendment challenge, if conditions are not so atypical or burdensome as to trigger due process protections, such conditions could not be so inhumane as to violate the Eighth Amendment."); *see also McNeal v. Cheruvathor*, No. CV JKB-18-2236, 2018 WL 3740697, at *2 (D. Md. Aug. 6, 2018) (finding that because the plaintiff's placement in administrative segregation did not represent an atypical and significant hardship, "he cannot allege a due process violation, much less an Eighth Amendment violation."); *Holley v. Johnson*, No. 7:08-CV-00629, 2010 WL 2640328, at *12-13 (W.D. Va. June 30,

13

2010) (applying *Beverati* to Eighth Amendment claim); *Moore v. Jackson*, No. 3:13-CV-677-FDW, 2014 WL 2196079, at *2 (W.D.N.C. May 27, 2014) (same).

Accordingly, the Fourth Circuit's determination in *Beverati* that conditions which were similar, if not more distasteful, and lasted for significantly longer than the conditions at issue here, did not rise to the level of a constitutional violation guides the analysis of whether Plaintiff's claim reveals an objectively serious deprivation. *See* 120 F.3d at 504. Plaintiff's most serious allegation is that his cell was flooded with sewage water for a period of six to twelve hours. Other courts in this circuit have found that similar claims do not state an objectively serious deprivation as required by the Eighth Amendment. *See Powell v. Fed. Bureau of Prisons*, No. 1:08-CV-00199, 2009 WL 3160124, at *1 (S.D.W. Va. Sept. 25, 2009) (dismissing Eighth Amendment claim where plaintiff asserted, that, among other issues, her cell "was permeated with stale air that is saturated with the fumes of feces, the smell of urine and vomit as well as other stale bodily odors."); *see also Resper v. Shearin*, No. CIV.A. PJM-13-3310, 2015 WL 993817, at *1-2 (D. Md. Mar. 4, 2015) (denying the plaintiff's Eighth Amendment claim alleging, among other complaints, that prison officials did not take appropriate action after mentally ill inmates caused the plaintiff's cell to become flooded with sewage); *Harris v. FNU Connolly*, No. 5:14-CV-128-FDW, 2016 WL 676468, at *5 (W.D.N.C. Feb. 18, 2016), *aff'd*, 667 F. App'x 408 (4th Cir. 2016) (dismissing claim wherein plaintiff alleged he was held in cell with "massive amount of urine, feces, and vomit on both the floor and walls" for 45 days as "courts have found no constitutional violation in other cases involving similar time periods when the prisoner was allegedly exposed to unsanitary conditions."); *Joyner v. Patterson*, No. 0:13-CV-2675-DCN, 2014 WL 3909531, at *4 (D.S.C. Aug. 11, 2014), *aff'd*, 597 F. App'x 748 (4th Cir. 2015) (plaintiff was "allowed no outside recreation; provided infrequent and

limited number of showers; subjected to filthy floors, showers, and food trays; exposed to riot gas; and given a cell that, on several occasions, was flooded with toilet water containing urine and feces."); *Wagner v. Warden*, No. CIV.A. ELH-14-791, 2015 WL 1276749, at \*41 (D. Md. Mar. 19, 2015) (denying Eighth Amendment claim where inmate complained he was placed for two days in a cold cell without a mattress, toiletries, or running water, and with feces and urine on the floor because "the times he was allegedly placed in these conditions was brief."). Courts in other circuits have likewise rejected similar complaints. *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 491 (S.D.N.Y. 2014) (finding that inmates' exposure to sewage-flooded cells was "undeniably unpleasant, and something that prison officials should prevent," but that, "this single unfortunate incident alleged is not grounds for an Eighth Amendment claim.") (collecting cases); *see also McNatt v. Unit Manager Parker*, No. 3:99CV1397 AHN, 2000 WL 307000, at \*4 (D. Conn. Jan. 18, 2000) ("Generally, the Eighth Amendment is not violated where the unsanitary conditions are temporary."); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 956 (8th Cir. 1994) ( cell was "covered with dried feces on both the inside and outside, the sink was covered with hair and vomit, the floor was covered with garbage and rotting food, and the walls were covered with dried human mucus" but denying claim "because of the brevity of [the plaintiffs'] confinement in the admittedly unsanitary cell."); *Prellwitz v. Anderson*, Civil No. 07–2120 (PAM/JSM), 2007 WL 2033804 at \*2–3 (D.Minn. July 12, 2007) (granting motion to dismiss under 28 U.S.C. § 1915A(b) where inmate was subjected to a cell flooded with sewage smelling of feces for approximately six hours); *Porter v. Selsky*, 287 F. Supp. 2d 180, 186 (W.D.N.Y. 2003), *aff'd sub nom. Porter v. Coughlin*, 421 F.3d 141 (2d Cir. 2005) (evidence revealed that "the SHU is indeed an extremely unpleasant place, where feces-throwing, spitting, urinating, overflowing toilets, and fires set by

15

inmates are regular occurrences." However, no Eighth Amendment claim as prison officials took "reasonable measures" in responding to conditions.).

Cases where similar conditions have been found to be an objectively serious deprivation sufficient to violate the protections provided by the Eighth Amendment generally involve either prison officials acting deliberately in creating the unsanitary conditions, the conditions lasting for an extended and unreasonable amount of time, or both. *See e.g. Clark v. Daddysman,* No. CV TDC-16-0921, 2018 WL 1453333, at *10 (D. Md. Mar. 22, 2018)*, appeal dismissed sub nom. Clark v. Gelsinger,* 738 F. App'x 244 (4th Cir. 2018) (distinguishing from a prior case finding no violation when a prisoner was exposed to feces due to actions of other inmates, from the case before the court where "exposure to unsanitary cell conditions [was] attributable to deliberate decisions" made by prison officials); *Ortiz v. Dep't of Correction of City of New York*, No. 08 CIV. 2195 RJSHBP, 2011 WL 2638137, at *6-7 (S.D.N.Y. Apr. 29, 2011), *report and recommendation adopted sub nom. Ortiz v. Hernandez*, No. 08 CIV. 2195 RJSHBP, 2011 WL 2638140 (S.D.N.Y. July 5, 2011) (contrasting cases "where exposure to sewage lasts for a substantial period of time" and has been found to be a violation, from cases "where exposure to such waste is intermittent or limited to a matter of hours") (collecting cases). As these cases demonstrate, when prisoners have been subjected to unsanitary conditions that are similar to those experienced by Plaintiff, for similar amounts of time, courts have generally been unwilling to find a violation of the Eighth Amendment.

Plaintiff alleges that, due to the actions of other inmates, he was forced to endure a cell flooded with sewage water for approximately six to twelve hours before prison officials were able to remove the water. While this undoubtedly was an unpleasant situation, and the unsanitary conditions he describes were regrettable, given the relatively

brief duration of the conditions, the undersigned **FINDS** that the incident did not create a deprivation that was "sufficiently serious," to meet the objective component of an Eighth Amendment claim. *Iko*, 535 F.3d at 238.

The other conditions mentioned by Plaintiff also did not deprive him of the "minimal civilized measure of life's necessities" making the deprivations "sufficiently grave to form the basis of an Eighth Amendment violation." *Shakka*, 71 F.3d at 166. Plaintiff asserts that for the two to three weeks he was placed in administrative segregation at the WRJ, he received no recreation or gym time, insufficient laundry services, cold and undercooked meals, was placed in a cell which contained mold and iron stains, and was adjacent to inmates who would constantly urinate on the floors and smear their own feces on the walls. (ECF No. 3 at 5-7). Plaintiff also stated at the status conference that, while the prison did remove the fecal water following the flooding incident, they did not thoroughly clean the individual cells, and, as a result, Plaintiff's cell emitted an odious smell for the remainder of his stay. These conditions while, again, certainly unpleasant, were no worse than those in *Beverati* in which the plaintiffs alleged they were served cold food, denied recreation time, received inadequate laundry services, and were placed in cells smeared with human feces and urine for a period of six months. *See* 120 F.3d at 504. Other courts in the Fourth Circuit have considered substantially similar conditions and found that, for time periods greater or similar to that at issue here, they do not rise to the level of an Eighth Amendment violation. *See Reed v. Olson,* No. 4:09-CV-3126-JFA-TER, 2011 WL 765559, at *3 (D.S.C. Jan. 19, 2011), *report and recommendation adopted*, No. 4:09-3126-JFA-TER, 2011 WL 742509 (D.S.C. Feb. 24, 2011) (cold and uncooked food); *Bedell v. Angelone*, No. 2:01CV780, 2003 WL 24054709, at *14 (E.D. Va. Oct. 3, 2003), *aff'd sub nom. Bedell v. Vt. D.O.C.*, 87 F. App'x 323 (4th

Cir. 2004) ("Being served rotten food is unpleasant and unfortunate; however, it simply does not rise to the level of a constitutional violation because plaintiff has not shown that it resulted in a serious deprivation..."); *Joyce v. Thomas*, No. CIVA 7:07CV00198, 2007 WL 1447902, at *1 (W.D. Va. May 14, 2007) (denial of recreation time for six months); *Sturkey v. Ozmint,* No. C/A 8:07-3296-MBS, 2008 WL 4507508, at *7 n.1 (D.S.C. Sept. 30, 2008), *aff'd*, 326 F. App'x 196 (4th Cir. 2009) (denial of recreation time for 65 days while plaintiff was in administrative segregation did not violate Eighth Amendment); *Johnson v. Fields*, No. 2:14-CV-38-FDW, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017) ("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); *Moore v. Parham*, No. 1:16-cv-01519, 2017 WL 4118458, at *3-4 (E.D. Va. Mar. 23, 2017) (denial of hygiene items for 19 days did not violate Eighth Amendment).

Concluding that the conditions present in a prison are not an objectively serious deprivation does not mean that the conditions are satisfactory, nor does it suggest that the prison officials tasked with the custody of those in their charge have performed commendably, it simply means that the conditions have not risen to the level of extreme deprivation resulting in the denial "of the minimal requirements of civilized existence" necessary to establish an Eighth Amendment violation. *Strickler*, 989 F.2d at 1381–82. Accordingly, the undersigned **FINDS** that Plaintiff's allegations, accepted as true, fail to state a claim that he has been subjected to the type of "extreme deprivations" that "are adequate to satisfy the objective component of an Eighth Amendment claim." *Shakka*, 71 F.3d at 166. Because Plaintiff's complaint does not describe an objectively serious deprivation, it is unnecessary to consider whether the Defendants acted with an intent sufficient to satisfy the subjective component of an Eighth Amendment claim. *See*

18

*Strickler*, 989 F.2d at 1379.

### 2. Serious physical or emotional injury

Even assuming that the conditions described by Plaintiff did rise to the level of an objectively serious deprivation, Plaintiff's claim would still be subject to dismissal as none of the objectionable conditions caused an injury as required by Fourth Circuit law. In order to establish that an objectively serious deprivation has occurred, "a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler,* 989 F.2d at 1381. This is because "[t]he Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Id.* Accordingly, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Id.*

Plaintiff does not assert that he has suffered any significant physical or mental injury in his complaint. Plaintiff does speculate that the experience may result in future mental injury, saying "[i]t's too soon to see what problems this will cause any one of us in the future[.] [W]ill we need medication for PTSD or what whos [sic] to say[?]" (ECF No. 3 at 5-6). Plaintiff additionally states that the conditions caused him "mental anguish." (*Id.* at 7). While Plaintiff did not describe any physical injury resulting from the conditions in his complaint, he stated during the status conference that his lungs became temporarily irritated by breathing in the fetid air while he waited for his cell to be cleaned after it was flooded. Plaintiff conceded that the irritation was not of a prolonged duration and did not result in any long-term effects. He did not mention any other physical or emotional injuries suffered as a result of the complained of conditions.

To the extent that Plaintiff's speculation regarding potential future mental illnesses and references to "mental anguish" is taken as an attempt to raise a claim based on mental injury, he fails to state a claim. This Court, as well as other courts in the Fourth Circuit, have regularly found that "generalized claims of adverse mental health" are not sufficient to establish a significant mental injury without some further specification. *See Germain v. Bishop*, No. CV TDC-15-1421, 2018 WL 1453336, at *13 (D. Md. Mar. 23, 2018); *see also Powell v. Fed. Bureau of Prisons*, No. 1:08-CV-00199, 2009 WL 3160124, at *4 (S.D.W. Va. Sept. 25, 2009) ("Plaintiff merely alleges that she has suffered 'mental anguish' as a result of the above conditions of confinement."); *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 472 (4th Cir. 1999) (inmates failed to sufficiently specify a mental injury where they said only that "the overall conditions of their confinement [placed] them under 'great stress' and caused them 'great emotional and physical suffering.'"); *Gannon v. Cent. Virginia Reg'l Jail*, No. CIV.A. 7:08CV00394, 2008 WL 2853629, at *1 (W.D. Va. July 22, 2008) (dismissing the plaintiff's claim where "the injuries are entirely speculative and thus are not sufficiently serious to rise to the level of an Eighth Amendment violation."). Therefore, the undersigned **FINDS** that Plaintiff's generalized claims of "mental anguish" and speculation about the possibility of future mental injuries are insufficient to state a claim based on mental injury.[1]

Plaintiff described a single physical injury at the status conference. However, Plaintiff also explained that this condition produced no long-lasting effects, and that he

---

[1] A claim for compensatory damages based on the mental distress the conditions caused would face an additional bar in the Prison Litigation Reform Act, which provides that physical injuries are a prerequisite for an award of damages for emotional distress under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(e).

did not require or receive medical attention for the ailment. The injury described by Plaintiff does not rise to the level of a serious or significant injury as required to establish a violation of the Eighth Amendment. *See Pumphrey v. Coakley*, No. CV 5:15-14430, 2018 WL 3193845, at *8 (S.D.W. Va. Jan. 30, 2018), *report and recommendation adopted*, No. 5:15-CV-14430, 2018 WL 1359047 (S.D.W. Va. Mar. 16, 2018) ("stomach distress, debilitating headaches, vomiting, short-term memory loss, and early dementia-like symptoms" did not "arise to the level of a serious or significant injury."); *see also Hammond v. S.C. Dep't of Corr.*, No. C.A. 4:06-3357, 2007 WL 2822394, at *4 (D.S.C. Sept. 25, 2007) (the plaintiff's complaints of eye, skin, and throat irritation did not provide a serious or significant physical injury as the plaintiff never sought medical treatment); *Webb v. McKnight*, No. CIV.A. 7:06CV00734, 2006 WL 3761382, at *2 (W.D. Va. Dec. 20, 2006), *aff'd*, 225 F. App'x 117 (4th Cir. 2007) ("[T]he injuries of which [the plaintiff] complains-indigestion, constipation, headaches, occasional vomiting, and emotional distress-are not sufficiently serious to rise to the level of an Eighth Amendment violation."); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) ("The sliver of glass in [the plaintiff's] palm was no doubt uncomfortable, but it was not a serious injury."); *Alexander v. Tippah Cty., Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (dismissal of claims where inmates were held in small cell with clogged toilet drain and exposed to sewage for 24 hours as only physical injuries, nausea and vomiting, were not "severe enough to warrant medical attention" and were not "a symptom of some more serious malady, or had any lasting effects"); *Laughlin v. Mayor of Duffield*, VA, No. 7:07CV00491, 2007 WL 3339504, at *1 (W.D. Va. Nov. 7, 2007) (collecting cases). As such, the undersigned **FINDS** that Plaintiff's description of a transient lung irritation, which did not warrant medical attention or cause permanent physiological changes, was not a serious or

significant injury as required to establish an Eighth Amendment claim.

In summary, the undersigned has concluded that Plaintiff's claims for injunctive relief are moot as there is no longer a live or present controversy as required by the Constitution. The undersigned has additionally determined that, accepting all factual allegations as true, Plaintiff's complaint does not describe an objectively serious deprivation sufficient to satisfy the objective component of an Eighth Amendment claim. Finally, the undersigned notes that Plaintiff did not suffer a serious or significant injury as required to maintain an action under the Eighth Amendment. Given that Plaintiff fails to state a plausible Eighth Amendment claim, the undersigned need not address Defendants' immunity arguments.

With respect to the remaining Defendants, Franklin, Guice, Theuithen and Hughs, the record reflects that they were not served with process and, thus, have not entered an appearance in this case. However, the undersigned **FINDS** no purpose in re-attempting service on these defendants in light of the findings and recommendation that the complaint be dismissed for failure to state a claim.

## IV.    __Proposal and Recommendations__

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' motions to dismiss, (ECF Nos. 21, 30, 36, 39, 41); **DISMISS** the Complaint in its entirety, **with prejudice**, (ECF No. 3); and **REMOVE** this matter from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall

have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, Defendants, any counsel of record, and any unrepresented parties.

**FILED:** July 19, 2019

Cheryl A. Eifert
United States Magistrate Judge

23